**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

LUCY D'SOUZA                                    *

Plaintiff                                       *

v                                               *            Civil Action No. PX-15-1979

WASHINGTON METROPOLITAN          *
AREA TRANSIT AUTHORITY

Defendant                                       *
                                                ***

## MEMORANDUM OPINION

Pending is Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion to Reconsider this Court's Letter Order dated January 9, 2017 (ECF No. 60) denying Defendant's eleventh hour request to designate life-care expert, Trudy Koslow, well beyond the expert designation deadline that this Court has set – and reset – on several occasions. ECF No. 62. Defendant further moves for the Court to reconsider its Order denying Defendant's request for a protective order limiting the deposition of Defendant's witnesses designated pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff opposes the Motion to Reconsider. ECF No. 68. For the reasons that follow, Defendant's Motion is DENIED.

### A. Procedural History Related to Expert Designations

This case suffers from a long and convoluted pretrial history centered on expert discovery. Because Defendant takes umbrage at this Court's January 9, 2017 Order denying designation of its life care planner well beyond the deadline for Defendant's expert designations, this history bears comprehensive review.

On November 23, 2013, Plaintiff, a now 76 year-old woman, was involved in a car

accident while a passenger on one of WMATA's MetroAccess motor vehicles. As a result, she allegedly suffered serious traumatic brain damage, loss of consciousness, broken bones, respiratory failure and hearing loss. ECF No. 62-1. Plaintiff originally filed her negligence action against Defendant in the Circuit Court for Prince George's County on April 22, 2015.  ECF No. 2.  Defendant removed the case to this Court on July 6, 2016. ECF No. 1.

On August 18, 2015, the Court issued the first scheduling order in this case, originally setting Plaintiff's expert disclosures under Rule 26(a)(2) of the Federal Rules of Civil Procedure at January 29, 2016 and Defendant's at **February 18, 2016**. ECF No. 16. That same day, Defendant moved to extend time regarding expert disclosures, representing to the Court that during an earlier Rule 16 teleconference, Defendant noted that "the damages aspects of [Plaintiff's] case are comprehensive and complicated." ECF No. 17. In light of Plaintiff's damages profile – which was already known to Defendant – Defendant requested that its expert disclosures be due on **April 29, 2016**. ECF No. 17-1 at 2–3. Defendant also emphasized in its request that while the Court at the status conference "seemed amenable to the deadlines requested," the Court nonetheless would schedule a status conference in January of 2016 "in order to maintain control." ECF No. 17-1 at 2. The Court then granted Defendant's motion to allow Defendant sufficient time to designate experts responsive to Plaintiff's "comprehensive and complicated" damages profile. ECF No. 18.

On January 28, 2016, Plaintiff then requested that all expert designations be extended **one month** to accommodate voluminous medical records that Plaintiff had yet to receive. ECF No. 20. Defendant did not object to that motion and did not ask for additional time beyond the proposed defense expert disclosure deadline of **May 31, 2016**, even in light of Plaintiff's representations regarding outstanding medical records. The Court granted this second request.

ECF No. 21.

Plaintiff then requested, and Defendant did not oppose, an additional month extension on expert disclosures to accommodate Plaintiff's expert neurologist who had suddenly lost his brother, sister-in-law and nephew in a car accident. ECF No. 23. This request put Plaintiff's expert disclosures due on March 30, 2016 and Defendant's on **June 30, 2016**. Once again, Defendant did not raise any objection or seek additional time beyond a June 30, 2016 deadline. ECF Nos. 23 and 24.

Notably, this was Plaintiff's final request for any extensions of expert deadlines. By all accounts, Plaintiff then complied with her discovery obligations. She disclosed all medical records by early 2016 and met her expert disclosure deadlines, designating all experts and disclosing all reports by March 30, 2016. ECF No. 25 ("On March 30, 2016, Plaintiff specifically disclosed Pedro Steven Macedo, M.D. (neurologist); Peter Sorman, Ph.D (psychology/neuropsychologist); Lynne Trautwein, R.N. (nurse life care plan); Thomas Borzilleri, Ph.D. (economist)"). Accordingly, by **March 30, 2016**, almost one year ago, Defendant had Plaintiff's life care expert report – a comprehensive fourteen page analysis of Plaintiff's future medical needs – and all underlying support and documentation.[1]

Thereafter, Defendant has filed several requests to amplify and amend expert discovery, much of which has been granted despite significant delay to the orderly progression of this case. In particular, this Court granted Defendant's request for Plaintiff to submit to a medical examination pursuant to Rule 35 of the Federal Rules of Civil Procedure and the continuance of Defendant's expert disclosures by ninety days, until **August 29, 2016**. ECF Nos. 25, 28.[2] This

---

[1] Plaintiff has provided to the Court the February 2016 expert life care plan that was prepared by Lynne Trautwein, R.N. and disclosed to Defendant on March 30, 2016.

[2] Rule 35 permits the Court to order that the Plaintiff "submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35. It does not supplant Defendant's ability to designate experts

Court then fielded further disputes between the parties regarding the conditions set for the Rule 35 examination, most notably whether Plaintiff would be permitted either to videotape the examination or have an independent observer present. ECF Nos. 29, 30.  This Court held a status conference on this matter, after which the parties submitted an "Agreed Order" setting the conditions of the Rule 35 examination. ECF Nos. 33, 34. This Order not only resolved the outstanding disputed issues regarding the Rule 35 examination, but extended discovery deadlines (of which Defendant's expert disclosures were next in the queue) by an additional 30 days. ECF No. 35, 36.  Now Defendant's expert disclosures became due **September 28, 2016**.

Of special import is that the Court ordered the Rule 35 examiner, Dr. Richard M. Restak, to disclose his Rule 35 report "within 15 days of the examination." ECF No. 35. This the doctor did not do.  In fact, even though Dr. Restak met with Plaintiff on September 8, 2016, no report was authored because Dr. Restak claimed – and Defendant endorsed – that he could not complete the report without Plaintiff submitting to an evaluation by an otolaryngologist, Dr. Ashkan Monfared, M.D. at the George Washington University-Medical Faculty Associates. Dr. Restak also claimed to need a records review by a neuroradiologist and the deposition of Christine D'Souza, Plaintiff's daughter, before he could author a report. ECF No. 37. This Court ordered once again that Dr. Restak comply with this Court's original order and author a report based on his medical examination of Plaintiff by no later than October 14, 2016. ECF No. 41.

Notably, once Dr. Restak complied, his report highlighted that his "inability" to write a report was better characterized as a choice.  Despite not yet having the above stated "requirements," Dr. Restak opined in his report that "it's **<u>certain</u>** from the review of the records that Ms. D'Souza sustained multiple traumatic injuries in the November 26, 2013 accident, which included a brain injury as well as multiple fractures in the cervical spine and left

necessary to mount a defense to liability or damages.

zygomatic arch, and the left clavicle." ECF No. 62-4 at 5 (emphasis added). Indeed, what became plain from Dr. Restak's report is that he wished to understand more about Plaintiff's hearing loss, and so requested that Ms. D'Souza see Dr. Monfared. *Id.*

Accordingly, despite the fact that granting Defendant's request for Ms. D'Souza to submit to audiology testing would further delay discovery, delay the resolution of her case, and compel that she submit to another examination, the Court ordered such testing be conducted by no later than November 7, 2016 and within a ten mile radius of Plaintiff's residence. The Court issued this order only after yet another extensive status conference with the parties on October 24, 2016 and over Plaintiff's vigorous objection. ECF Nos. 39–44.

Specifically, Plaintiff noted that Plaintiff's post-accident hearing loss is undisputed. ECF No. 39 at 1. Plaintiff also noted that Defendant claimed a need to rebut Plaintiff's "alleged cortical deafness," even though Plaintiff had never claimed to suffer from "cortical deafness." *Id.* Finally, Plaintiff underscored that she had already undergone relevant testing related to hearing loss during her treatment, the results of which the Defendant and Dr. Restak had for months. *Id.* at 2. Nonetheless, the Court gave Defendant the benefit of the doubt, albeit with limitations regarding the testing.

By this October 24 status conference, the Defendant's September 28, 2016, expert disclosure deadline had come and gone. The parties had already engaged in extensive discovery regarding the nature, severity and permanence of Plaintiff's injuries. The Court had conducted no fewer than *four* status conferences related to the scope of expert discovery. Defendant had been in possession of not only Plaintiff's life care plan since March 30, 2016, but all of the underlying expert reports and medical documentation. Yet **not once** had Defendant ever raised the potential that it may need more time to allow for the designation of Defendant's own expert life care

planner.

Then, on **December 27, 2017**, three months after Defendant's expert disclosures were due, Defendant for the first time sought leave to designate Ms. Koslow as its life care plan expert. ECF No. 55. In its request, Defendant admits that it had waited until after November 28, 2016 to forward to Ms. Koslow "Plaintiff's expert reports" as well as "Plaintiff's video deposition," along with Dr. Restak's reports. *Id.* at 3. Defendant also argued that the delay was excusable because Ms. Koslow's life care plan was "based on Dr. Restak's assessment" and advances "a treatment alternative for the Plaintiff that best addresses her needs." *Id.* Specifically, the "treatment alternative" is to place Plaintiff in a skilled nursing facility rather than provide for her needs at home through 24-hour skilled nursing care.[3]

Accordingly, on January 25, 2017, after this Court's *fifth* telephone conference concerning expert discovery, Defendant's request to designate Ms. Koslow well beyond the expert discovery deadline was denied because Defendant failed to show requisite good cause. ECF No. 60.  Defendant now moves for this Court to reconsider its order. ECF No. 62. Plaintiff once again vigorously and rightfully objects.  ECF No. 68.  Once again, the Court denies Defendant's request.

### B. Analysis on Motion to Reconsider Defendant's Expert Designation Out of Time

The party moving to reconsider a court's prior order must demonstrate either change in controlling law or additional evidence not previously available, or that the Court has "patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Potter v. Potter*, 199 F.R.D. 550, 552 (D. Md. 2001) (internal citations and quotations omitted). *See also Innes v. Bd. of Regents of the Univ. Sys. of Md.*, 121 F. Supp. 3d 504, 506–07 (D. Md. 2015).  Defendant

---

[3] The Court has reviewed all expert reports that Plaintiff provided to Defendant in March 2016.

has not met its burden here.

First, Defendant advances the same arguments that it did at the January 9, 2017 telephonic hearing. Defendant argues that essentially Ms. Koslow was unable to opine on Plaintiff's needs until Dr. Restak issued his final report in November of 2016.  Not only is this argument a rehash of the January 9th hearing, it is not credible. Since March 30, 2016, Defendant knew (because Plaintiff complied with her expert disclosure deadlines), that Plaintiff's supported accident-related damages include:

*sustained traumatic brain injury as demonstrated by MRI imaging and an array of post-accident deficits. *See March 28, 2016 Report of Expert Neurologist Pedro Macedo, MD.*

*poor hearing, significant balance problems, tremor in the left hand, weakness in the left hand and both legs, and is in need of total, round-the-clock care by her daughter. *Id.*

*an array of cognitive, academic, motor functioning, memory, visual-spatial, executive, attentional and emotional deficits. *See December 2015 Neuropsychological Evaluation of Lucy D'Souza conducted by Peter B. Sorman, Ph.D.*

Additionally, as early as March 30, 2016, Defendant knew that Plaintiff's experts viewed the above-described injuries as permanent and causally related to the November 23, 2013 accident. Most critically, Defendant also had the Plaintiff's comprehensive life care plan which itemized in great detail the future needs of Plaintiff.

For Defendant now to say that its own life care expert was <u>unable</u> to generate a responsive life care plan within the expert discovery deadline simply blinks at reality.  Indeed

Ms. Koslow in her report admits to reviewing the Plaintiff's expert reports, life care plan and medical records that were in the Defendant's possession since early 2016. Defendant provides no explanation for Ms. Koslow did not receive this information sooner and offer a responsive opinion within the Court's discovery deadlines.

Nor can Defendant use Dr. Restak as a plausible reason for delay.  First, Defendant chose to wait until June of 2016 before contemplating a request for a Rule 35 examination. Then, despite knowing that Plaintiff suffered from some post-injury hearing loss since receiving the medical records in late 2015, Defendant chose to wait until after Dr. Restak's report to request further audiology testing in October 2016, after the defendant's deadline for expert designations had since passed. This audiology testing never took place, and yet ultimately posed no barrier to Dr. Restak rendering final opinions to include his views on Plaintiff's hearing loss.[4]

More to the point, Koslow's report emphasizes the undisputed bottom line: "that Ms. D'Souza sustained a traumatic brain injury and has hearing impairment and lateralized weakness as indicated in the reports." All of this is evidence that Defendant had since early 2016 which should have prompted Defendant to designate defense experts who could assess, and if necessary, rebut Plaintiff's experts within the discovery deadlines.

At base, Defendant offers no new evidence or makes no new legal arguments in its motion to reconsider.  Nor has Defendant demonstrated that the Court "patently misunderstood" its arguments or made an error "not of reasoning but of apprehension." *Potter*, 199 F.R.D. at 552 (internal citations and quotations omitted). Rather, Defendant expresses dissatisfaction with the

---

[4] Defendant blames the failure to accomplish this testing on the Court's geographic limitations regarding the test site. ECF No. 62-1, n.6.  Interestingly, Defendant had never brought to the Court's attention that this geographic limitation "virtually assured [the testing's] nonperformance" at the time the testing should have been completed, although Defendant is quick to assert that claim now. *Id.*  The Court further notes that Dr. Restak ultimately was able to complete his report and render a final opinion as to Plaintiff's hearing loss through consultation with Dr. Monfared only, thus begging the question as to how "essential" the audiology testing was in the first instance.

Court's ruling but never once addresses *why* Defendant did not timely designate a life care planner, and the attendant underlying experts, within the discovery deadlines set by the Court.

Deadlines set by this Court are not mere suggestions. Nor are they loose guideposts that should be moved down the line to accommodate Defendant's seriatim approach to discovery. The Court repeatedly warned *both* parties that discovery will come to an end according to the scheduling order in place at the time and that both sides should plan accordingly. Defendant did not so plan, and had supplied no good cause for this Court to extend its expert discovery deadline yet a seventh time. Defendant's Motion to Reconsider its ruling on the late designation of Ms. Koslow is therefore denied.

### C.  Facts Surrounding Defendant's Objection to Plaintiff's 30(b)(6) Depositions

At the outset it bears noting that a 30(b)(6)[5] deposition has taken place on all of Plaintiff's designated topics save for one. ECF No. 68. Specifically, the outstanding topic concerns "all facts and documents upon which [Defendant] base[s] [its] contention set forth in [its] Eighth Defense that "Plaintiff's injuries and damages as alleged in the Complaint are not causally related to the occurrence; and her healthcare provider treatment, resulting expenses and other economic losses and damages as alleged in the Complaint were neither reasonable not necessary." *Id.* Nonetheless, Defendant moves to reconsider the Court's previous Order that the 30(b)(6) deposition on all of Plaintiff's designated topics be completed on or before January 27, 2017.  In so doing, Defendant objects to the overbreadth of the topics and to related document production requests. ECF No. 62-1 at 12–13. Ultimately, Defendant's requested relief – that the

---

[5] A deposition noted pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure permits a Defendant corporation or organization to designate one or more persons as deponents to testify on its behalf regarding pre-identified topics described with "reasonable particularity." The testimony is offered "on behalf of," and thus is binding on, the corporation.  *Id. See also United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) ("[T]he corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation.").

Court "[w]hen and where appropriate issue a protective Order in favor of Defendant WMATA" regarding the 30(b)(6) depositions – is vastly overbroad to the point that it is non-enforceable and is denied on this basis. *Id.* at 14.

That said, the history on this issue once again bears repeating. On **January 6, 2017**, one week before the close of fact discovery, Defendant filed a scathing letter accusing Plaintiff of last minute gamesmanship in the noting of her intent to take a 30(b)(6) deposition. ECF No. 57. Specifically, Defendant argued that "Plaintiff violated almost every discovery rule and discovery guideline regarding noticing and scheduling the deposition of a corporate defendant." *Id.* at 3. Defendant further accused Plaintiff of never discussing with Defendant "the broad spectrum of topics," in the 30(b)(6) notice that Defendant would have the Court believe Defendant had just received. Indeed, Defendant complained that "Plaintiff's counsel has not given undersigned counsel for WMATA time to even contact and clear dates with appropriate WMATA employees," and has "at the last minute, deluged this case with limitless discovery inquiries that are overwhelming and in some cases irrelevant." *Id.*

What Defendant **<u>did not disclose to the Court</u>** in its January 6, 2017 letter is that:

1. Plaintiff first provided the 30(b)(6) deposition topics via email to Defendant on **November 10, 2016**, two months before the January 6 letter**.** ECF No. 59-1.

2. Defendant received and reviewed the topics and responded on November 10 by email, lodging overbreadth and privilege objections only as to topics 6–8, 10–12, and 13 (a) and (b). ECF No. 59-2.

3. Plaintiff on more than one occasion offered an array of deposition dates, none of which Defendant could accommodate. Plaintiff also addressed Defendant's objections to the selected topics. ECF Nos. 59-2, 59-3.

Furthermore, this Court had already granted a joint motion to modify the scheduling order to accommodate Plaintiff's 30(b)(6) depositions (ECF No. 48), underscoring that Defendant had ample advance notice of Plaintiff's proposed 30(b)(6) deposition. Defendant then complained to this Court in its January 6, 2017 letter in manner only fairly viewed as lacking in candor to the tribunal. The Court denied Defendant's request for protective order as to the designated 30(b)(6) areas, and ordered that the 30(b)(6) depositions be completed by January 27, 2017.

### D. Analysis on Motion to Reconsider the Court's 30(b)(6) Ruling

In its motion to reconsider, Defendant presents no grounds warranting reconsideration. Further, with regard to the only remaining 30(b)(6) topic, Defendant's "objection" is not an objection at all. Defendant simply states that "this defense will be addressed by Dr. Restak and Ms. Koslow with permission." ECF No. 62-1.  In so doing, Defendant implicitly agrees that the topic is set forth "with reasonable particularity" and is answerable by persons in the Defendant's control.  Defendant is thus obligated to designate one or more "persons who consent to testify on its behalf," about "information known or reasonable available to the organization," and such testimony will be binding on Defendant. *See* Fed. R. Civ. P. 30(b)(6). Defendant must coordinate this deposition to take place by close of business on February 13, 2017.  Failure to comply may put Defendant at risk of limiting its right to present evidence and lodge defenses related to this last remaining topic.

### CONCLUSION

For the foregoing reasons, Defendants Motion to Reconsider (ECF No. 62) is DENIED.

2/8/2017                                       /S/
Date                                    Paula Xinis
                                        United States District Judge